# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **PAUL G. KING**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | **CASE NO. 1:06CV01357** |
| | ) | JUDGE EMMET G. SULLIVAN |
| v. | ) | |
| | ) | |
| **MICHAEL O. LEAVITT**, | ) | |
| Secretary, Health and Human Services | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

### PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
### AND MEMORANDUM IN SUPPORT THEREOF

Defendants have moved to dismiss the amended complaint on the grounds that the administrative action is not final and plaintiffs have not exhausted their administrative remedies, and in their Memorandum in support thereof, they have noted some objections to the Motion for a Preliminary Injunction.

With regard to Count I of the Amended Complaint, Plaintiffs contend that the FDA has NOT responded to the Citizens Petition that was filed, and the relief being sought is an order directing the FDA to properly respond. This issue is ripe, and the Court has jurisdiction to hear evidence on this count. Plaintiffs would prefer that this Court treat the administrative action on this Citizen Petition as being final, and rule that administrative remedies have been exhausted. Plaintiffs are prepare to move to hearing on the issues involved in this case.

With regard to Count II, Plaintiffs would ask that this Court determine that the FDA letter of September 26, 2006 constitutes final administrative action and that Plaintiffs have exhausted their administrative remedies.

With regard to the claims in the amended complaint that the defendants have violated 42 U.S.C. §300aa-27, there is no need to exhaust any administrative remedy, and violations of this section can and should be heard by this Court now.

Plaintiffs are filing a Memorandum of Points and Authorities in support of this Opposition to the Defendants' Motion to Dismiss.


Respectfully submitted,

s/ *Clifford J. Shoemaker*
Clifford J. Shoemaker
Shoemaker & Associates
Counsel for Plaintiffs
9711 Meadowlark Road
Vienna, VA 22182
703-281-6395
Fax 703-281-5807


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was electronically filed this 23rd day of January, 2006.


s/ *Clifford J. Shoemaker*
Clifford J. Shoemaker

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

PAUL G. KING, et al.,                          )
                                               )
                          Plaintiffs,          )        **CASE NO. 1:06CV01357**
                                               )        JUDGE EMMET G. SULLIVAN
             v.                                )
                                               )
MICHAEL O. LEAVITT,                            )
Secretary, Health and Human Services           )
                                               )
                                               )
                          Defendants.          )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AND IN SUPPORT OF REPLY TO RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION**

Defendants have moved to dismiss the amended complaint on the grounds that the administrative action is not final and Plaintiffs have not exhausted their administrative remedies. While these are the only bases for their Motion to Dismiss, other issues are raised in their Memorandum in Support of Motion to Dismiss and in Opposition to Motion for Preliminary Injunction. Plaintiffs will address all of the issues raised in Defendants' Memorandum and will then summarize why the Complaint should not be dismissed, why the preliminary injunction should be granted, and why Plaintiffs should be allowed discovery and an immediate hearing on the motion for a preliminary injunction, if necessary to further answer the Court's questions with regard to that motion.

I.   RESPONSE TO COMMENTS MADE IN THE INTRODUCTION OF DEFENDANTS'
MEMORANDUM

Once again, the Defendants insist upon misstating what the Plaintiffs contended in the

July 30, 2004 Citizen Petition.   The CoMeD petition made no assertion that any products were

unsafe; it only correctly asserted that the "safety was not proven" to the degree required by law

for vaccines and other drugs preserved with Thimerosal or other mercury compounds.  It is hard

to understand why the Defendants continue to mischaracterize this issue.  One can only presume

it is because they cannot prove safety.

Defendants state that "children today are exposed to very little mercury …"  This could

not be further from the truth.  Several government studies now have shown increased rates of

autism and other neurodevelopmental disorders related to mercury emissions from coal-burning

power plants; warnings continue to be given that pregnant women and children should limit their

exposure to fish at the top of the food chain that contain higher levels of mercury.  Defendants

are justifiably proud of the fact that Thimerosal has been removed from most childhood vaccines

(although it took a great deal of public and Congressional pressure to get them to accomplish

this), but they still choose to ignore the facts.  This is the case because:

a)  childhood extends from some time after conception until 18 years of age and influenza

vaccines are recommended to be given to children every year from the time they are 6

months of age until now 59 months or longer if they have siblings in the 6- to 59-months

of age and to pregnant women,

b)  there are currently three (3) Thimerosal-containing early childhood vaccines (Tripedia

DTaP, Pediatrix DTaP-HepB-IVP, and Energix B Hepatitis B) that are "routinely

recommended,"

c) there are eight (8) other vaccines that can be administered to children that contain some level of Thimerosal, including Massachusetts Public Health's TD, Aventis Pasteur's TT, BIKEN' JE VAX (distributed by Aventis Pasteur), Aventis Pasteur's multi-dose Menomune A, C, AC and A/C/Y/W-135, and Aventis Pasteur's Canadian DT vaccine that are still Thimerosal-preserved (see Table 3, Food and Drug Administration, Center for Biologics Research and Development's [FDA CBER's] Thimerosal web page, http://www.fda.gov/cber/vaccine/thimerosal.htm, last updated November 16, 2006),

d) the maximum cumulative exposure of young children to mercury from vaccines easily exceeds 125 micrograms, an amount that is anything but "very little mercury,"  and an amount that exceeds 60% of the "187.5 micrograms of mercury" that young children were recommended to receive in their first 6 months post-partum prior to 1999, and

e) the exposure to the developing child when pregnant women are injected with mercury results in amounts of mercury per kilo of the developing child's weight that are clearly excessive and obviously dangerous.

Therefore, adding influenza vaccines for children and pregnant women, when added to the other admitted exposures of Thimerosal is not a "minimal" issue as Defendants argue.[1] In addition to all of this, because the influenza vaccines have been added to the recommended childhood vaccination schedule and recommended to pregnant women without proof of safety to their unborn child starting in 2002 without restricting these vaccinations to vaccines containing no Thimerosal, Defendants have clearly violated their statutory mandate set forth in Title 42 of

---

[1] The Plaintiffs note that the Defendants have presented <u>no</u> science-based factual studies that support their claim that "mercury exposure from those products is minimal" and cited <u>no</u> published toxicity studies that have established that these "mercury compound"-preserved drug products are "sufficiently nontoxic."  Further, the Plaintiffs note that many of these drug products are typically prescribed to the patient for use in volumes that are "20" to more than "100" times the volumes of the influenza vaccination so that the cumulative mercury dose from a single medication course for, for example, a nasal spray can be up to "250" micrograms or more of mercury – significantly more exposure than a child receives from vaccines.

3

the United States Code (42 U.S.C.) § 300aa-27(a)(2), a mandate to make vaccines safer, NOT more dangerous.

The Defendants once again raise the issue of whether the benefits of vaccines outweigh the risks. Since Defendants failed to prove safety or to <u>require</u> vaccine makers to prove safety to the extent required by law (Title 21 of the Code of Federal Regulations [21 CFR] § 610.15(a)), the FDA failed to meet the standard reaffirmed by Berkovitz that the FDA does <u>not</u> have the administrative discretion to ignore any clear policy, law or statute. While Plaintiffs can demonstrate that the risks of giving Thimerosal-containing influenza vaccines to pregnant women and children exceed any possible benefits, that is not the standard that the FDA must meet. The FDA is comparing vaccines versus no vaccines, and that is not the issue her. What the FDA has completely failed to consider or explain is why mercury (Hg) can't simply be removed from the products, retaining the "other" benefits of the products.

It is stated that the FDA "had no grounds on which to revoke the license, or withdraw the approval, of any manufacturers' products containing thimerosal or other mercury…." This is a curious statement, since just above that the FDA took credit for having Thimerosal removed from other childhood vaccines. Which is it? Did the FDA have the "grounds" to get the Thimerosal removed from those vaccines, but somehow they don't have the same "grounds" with respect to influenza vaccines? What evidence has been submitted showing that the "grounds" they had for removing it from other vaccines does not apply to influenza vaccines? Certainly, the risks from influenza in children are far less than the risks of diphtheria, pertussis, tetanus, hepatitis B, Haemophilus Influenzae Type b (Hib) and other diseases where Thimerosal has been removed from the vaccines to protect against these illnesses.

Plaintiffs resent the suggestion that removing Thimerosal from influenza vaccines could result in deaths. This is particularly true because Thimerosal-free influenza vaccines ARE available, and Defendants have offered no proof whatsoever that there is a shortage of such vaccines or that they could not be designated for use in children and pregnant women. This flippant comment is an example of a theme that runs throughout Defendants' pleadings and is troublesome. There is almost an arrogance in constantly saying to the Court that something is so just because the FDA says so. It reminds one of the oft-heard exchange between a parent and child:

> Child: "Why?"

> Parent: "Because I say so!"

The final paragraph on page 2 deals with the effect of a Petition for Stay filed by the Petitioners. This issue will be dealt with in great detail below, but some statements in the "Introduction" will be addressed here. The Petition for Stay did NOT ask "the FDA to reconsider and modify its response to the citizen petition." Also, the materials submitted to the FDA with the Petition for Stay do not provide any proof that Thimerosal as a preservative in vaccines is "sufficiently nontoxic so that the amount present in the recommended dose of the product will not be toxic to the recipient." ( 21 CFR] § 610.15(a)). The articles provided were published before the FDA issued its decision, and the FDA was well aware of the impending approval of FluLaval, another Thimerosal-preserved influenza vaccine at the time of the decision. All of this is discussed in more detail below, and, if the Court finds that a petition for a stay of action somehow compels the FDA to reconsider its decision rather that simply decide to grant or deny the only requested action, a stay of the FDA's decision, as the law indicates, the Plaintiffs are willing to withdraw the Petition for Stay of Action so that this case may proceed

and our children will be protected.  In point of fact, the FDA has treated (albeit illegally and incorrectly) that the Petition for Stay is a "new" Citizen Petition.  If that is their position, then the filing of another Citizen Petition would have no effect on the finality of the decision with regard to this Citizen Petition.

In the final paragraph of the introduction, the Defendants contend that even if the complaint were properly before the Court (which it is), and even if Plaintiffs were allowed to challenge the FDA's response to the Citizen Petition (which we are), then the Court should still deny the motion for a preliminary injunction.  The argument seems to be that there is no likelihood of success because the Court should defer to the FDA's scientific assessment, whatever that is.  Plaintiffs have seen no scientific assessments from the FDA, let alone an assessment of why we should be injecting any mercury into children and pregnant women when the vaccine is not effective and there are Thimerosal-free vaccines available.  This will also be addressed in more detail below.

II.    RESPONSE TO BACKGROUND

Under the section of Defendants' memorandum, in a section entitled "Statutory and Regulatory Framework," it is correctly stated that "[t]he PHSA governs the licensing of biological products, and grants FDA authority to issue licenses based on a demonstration that the biological product is "safe, pure, and potent,"  42 U.S.C. § 262(a)(2)(C)(i); 21 C.F.R. § 601.20. In order to receive a license, an applicant must provide FDA with, among other things, data derived from clinical and nonclinical studies showing the product's safety, purity, and potency; a description of manufacturing methods; data demonstrating the product's stability; and a representative sample of the product. 21 C.F.R. § 601.20(a).

Since 1973, the law (21 CFR § 610.15(a)) has explicitly required the manufacturers to prove that the preservative in their preserved biological drug products is safe ("sufficiently nontoxic …") but, as any reading of any of the Defendants' statements clearly reveals, the FDA has continued to ignore this biological standard and CGMP <u>minimum</u>, and has approved preserved vaccines and other drugs without having the requisite proofs of safety. Thus, the FDA has colluded, and is colluding, with the makers of mercury-compound-preserved vaccines and other mercury-compound-preserved drug products to permit them to produce and market adulterated drugs.

The "record" provided by the Defendants is devoid of any evidence of clinical or nonclinical studies showing the safety of Thimerosal. It simply is not there. To the contrary, the "record" consists of hundreds of pages of articles from the peer-reviewed medical literature describing the dangers of Thimerosal and the fact that it is carcinogenic, teratogenic, and neurotoxic. The FDA response to this massive repudiation of Thimerosal is, "You have not demonstrated that it is unsafe at low levels." And we respond, "We are not required to prove that it is unsafe; you are required to demonstrate that it is safe. What are you basing your decision upon?" And the FDA answers, "We are the FDA, and we are right because we say so!" But they still provide absolutely no evidence that Thimerosal at any level is safe.

Under the "II. <u>Mercury In FDA-Regulated Products</u>" section of the Defendants' memorandum, the FDA admits that it has abdicated its statutory duties with respect to Thimerosal. They admit, and there is nothing in the "record" to suggest, that they have no clinicial or nonclinical toxicity studies from the manufacturers of Thimerosal or Thimerosal-containing products that demonstrate safety. They admit that someone finally woke up in 1999 and realized just how much mercury our children were being exposed to from multiple

environmental sources and from as much as 187.5 micrograms of mercury being injected into them during their first half-year of life.[2]   They fail to point out that the 2001 IOM study concluded that it was "biologically plausible" that Thimerosal in vaccines was causing neurodevelopmental disorders.  They also fail to point out that the 2004 IOM committee refused to consider anything other than epidemiological data and based their decision on inadequate and flawed studies.[3]

The Defendants contend that, "In 1999, FDA conducted a review of Thimerosal in childhood vaccines and "found no evidence of harm from the use of Thimerosal as a vaccine preservative, other than local hypersensitivity reactions.""  First, by definition, "local hypersensitivity reactions" are evidence of harm, as the Defendants admit here.  However, Plaintiffs note that this review did not report finding what is required, namely, proof of safety to the standard established in 21 CFR 610.15(a).  Where is the FDA study that is being referred to? It is not in the "record."  Is it secret? As a matter of fact, there is nothing in the "record" that describes any deliberative reviews by anyone in the FDA about anything.  Again, the answer from the FDA seems to be, "This is the way it is, because we say so!"   Therefore, Plaintiffs must conclude that the Defendants answer here continues to admit that the requisite "proof of safety" required by 21 CFR 610.15(a) was not found in 1999 (and obviously had never even been looked at prior to 1999) even though:

---

[2]"In the 1990s, however, both the awareness of a potential for mercury neurotoxicity and the number of childhood immunizations containing Thimerosal increased, raising concerns about potential adverse effects from children's cumulative exposure to mercury in vaccines." (Quote from Defendants' memorandum.)
[3] A recent NIESH review of Vaccine Safety Datalink database and the U.S. epidemiological study, upon which the 2004 IOM committee relied, has found that the database is seriously flawed and the studies that used it are suspect and none of the published U.S. study's conclusions can be relied upon

a) all vaccines and other drugs containing Thimerosal or other mercury compound prior to 1999 contained a preservative or higher (e.g., antiseptics) level of Thimerosal or other mercury compound, and

b) the vaccine and other drug makers using Thimerosal or other mercury compounds as preservatives had been required by law (21 CFR 610.15(a)), since 1973, to provide the requisite proof for the Thimerosal or other mercury compound used as a preservative in each preserved vaccine or other drug product.

Therefore, the Defendants are admitting that they have knowingly approved Thimerosal-preserved vaccines and other drugs containing preservative levels of Thimerosal or other mercury compounds that were adulterated under 21 U.S.C. 351(a)(2)(B). Clearly, this was the case prior to 1999, and there is absolutely no evidence in the "record" suggesting that anything has changed since then.

Defendants go on to state that: "Despite these reviews showing a lack of harm[4] from Thimerosal use in medications, the Public Health Service (including FDA and the Centers for Disease Control and Prevention [CDC]), agents of the Secretary of Health and Human Services, concluded that, because it might be difficult to eliminate other environmental sources of mercury and the elimination or reduction of mercury in vaccines is a feasible means of reducing overall exposure, a goal would be established to remove Thimerosal from all vaccines routinely given to infants." Indeed, if the Public Health Service had followed through on this commitment to protect infants, then we would not be here today. Unfortunately, that has not occurred. Not only does Thimerosal remain in many products (a fact admitted by the Defendants in their

---

[4] When the legal standard to be met is "proof of safety" to the standard of "sufficiently nontoxic," then "reviews showing a lack of harm," even if valid (which is not the case here) do not, by their nature, meet the requisite "sufficiently nontoxic" standard for "proof of safety," which is the foundation of all drug law.

9

memorandum), but now it is also again being injected into children during the first year of life and into pregnant women. If the "phase out" policy made sense in 1999, then why stop at only getting rid of some of the removable Hg and even more so, why license and require NEW sources of Hg? This is not only a violation of the law, it is unconscionable, and, in the humble opinion of undersigned counsel, borders on being criminal. As a staunch supporter of childhood vaccines and someone who pushed for the passage of a no-fault compensation program to stop litigation against vaccine producers and administrators, what is being done today with regard to influenza vaccinations makes one angry. The FDA is not only failing to follow the law; they are failing our children.

The Defendants have the audacity to suggest that the actions being requested in this Complaint and in the Motion for Preliminary Injunction (dealing with influenza vaccines given to pregnant women and children) could result in injury and death.

> As explained in FDA's citizen petition response: "The goal of reducing mercury exposure from vaccines must be balanced against the goal of having enough vaccine available. If FDA now revoked the licenses for all Thimerosal-containing vaccines, many people would be in serious danger from the diseases that those vaccines prevent."[5] FDA Pet. Resp. at 5. For example, for the four antivenoms (snake and spider) containing ethyl mercury preservatives that remain on the market, FDA concluded: "Removal of the product[s] from the market by the FDA would not be in the best interest of the public health when no substitute products are available, and such an action would be likely to result in severe illnesses and deaths."[6] Id. at 6. The same is true for the influenza vaccine, where deaths and hospitalizations due to influenza have been documented.[7] The public interest weighs heavily

---

[5] If only some influenza vaccines contain Thimerosal and all others are Thimerosal-free, then how can their withdrawal place anyone in serious danger from any disease since the Defendants apparently claim all the others are Thimerosal-free?

[6] Since when are snake antivenoms vaccines?

[7] Since the influenza vaccines have been proven to be ineffective in preventing those inoculated from contracting influenza and, according to the FDA, there are Thimerosal-free formulations of influenza vaccine, Defendants are not justified in using influenza as an example. In addition, the factual evidence renders this a non-valid example.

in favor of a vaccine that lessens the actual risk of a preventable
disease causing serious illness or even death, as opposed to
removing the vaccine based on the theoretical, unproven risk of
harm from mercury as a preservative in some formulations of the
vaccine.[8] See id. at 8. The harm to the public health of removing all
mercury-containing products from the market far outweighs the
speculative harm to Plaintiffs alleged in the amended complaint,
further demonstrating that a preliminary injunction is not
warranted.[9]

What FDA is so careful to NOT say is why it simply can't remove the Hg from the

products and preserve the "benefits" of the vaccines. Where's the declaration from industry that

say removal of Hg is impossible, or that the other companies that do make Thimerosal-free

vaccines could not produce enough Thimerosal-free vaccine? This is a stunning failure!

It is the actions of the Defendants, not the Plaintiffs that are jeopardizing public

confidence in vaccination programs. Here we have a situation where influenza vaccine is not

even effective, especially for children. (Attached hereto at Tab A are two articles that clearly

demonstrate the ineffectiveness of influenza vaccines.) Here we have a situation where

Thimerosal-free influenza vaccine is available, and there has been absolutely no demonstration

by the Defendants that there is any shortage of Thimerosal-free influenza vaccine. Furthermore,

Defendants have made no efforts to designate that only preparations containing no Thimerosal or

other mercury compound be used for pregnant women and children. This year is a good example

of how the Defendants are the ones who are eroding public trust in our vaccine programs. The

CDC is telling people that, even though we aren't having much of a problem with influenza this

---

[8] Plaintiffs reject the Defendants' unsubstantiated non-specific benefit claim, "a vaccine that lessens the actual risk of a
preventable disease causing serious illness or even death." Moreover, Defendants' "as opposed to removing the vaccine
based on the theoretical, unproven risk of harm from mercury as a preservative in some formulations of the vaccine" is
yet another explicit admission that the "proof of safety" studies required to satisfy 21 CFR § 610.15(a) have not been
performed.

[9] Again, Defendants present no evidence to support their views here. Based on all of the preceding, the Court should
ignore the Defendants' unsubstantiated claims and assertions here.

year, and even though we know that the influenza vaccine this year may not protect us from the influenza that is circulating, you should nevertheless get the vaccine, even as late as February, because if we don't buy enough vaccine this year, the manufacturers may not produce enough next year when we may need it.

In this case, discovery is definitely needed to determine why, at a time when Thimerosal was being removed from all childhood vaccines, our Public Health Service through the CDC would start recommending injecting pregnant women and children with Thimerosal-containing influenza vaccines.  Prior to this time, influenza vaccines were not even recommended for these groups.  And we wonder why parents distrust our Public Health Service.  Whoever is making these decisions ought to be ashamed.

Defendants contend that very little Thimerosal is being injected into children today, so we shouldn't worry.  In fact, even this statement is demonstrably false.  Defendants misrepresent the maximum exposure of children to Thimerosal in vaccines. The statement that Thimerosal exposure is minimal "via routinely recommended childhood vaccinations because all such vaccines, with the exception of some formulations of the influenza vaccine, are now thimerosal-free" is false.

III.     RESPONSE TO PROCEDURAL HISTORY

With regard to Defendants' section "III. Procedural History", the FDA has violated its own rules in an obvious effort to frustrate this Complaint.  Attached hereto at Tab B is Plaintiffs' letter to the FDA spelling out the mistakes that have been made with regard to the administrative record.  Defendants argue for a restricted administrative record, including only the materials available to the Acting Commissioner prior to the date that the original Citizen Petition was filed.

Plaintiffs would agree that the FDA should have had proof that Thimerosal was sufficiently nontoxic as a preservative long before that date. However, the Commissioner not only has failed (to this date) to provide such evidence, but in the "so-called" decision letter dated September 26, 2006, the Commissioner cited to materials that appeared in the literature subsequent to the filing of the Citizen Petition, such as the Fombonne article.

What we are faced with procedurally, according to the Defendants, is a true "Catch-22." They are saying that it is Plaintiffs' burden to prove that Thimerosal is toxic. If that were the standard, which it is not, then the Defendants might have some semblance of an argument that the administrative record should be restricted to what was available to the Commissioner for review prior to September 26, 2006, the date the Commissioner decided to deny the petitioners' Citizen petition. Admittedly, if that were the standard (that the Plaintiffs have the burden to prove toxicity), then Defendants' argument that the Commissioner should be given more time to review the materials submitted with the Petition for Stay might seem reasonable.

Fortunately for the American public, that is not the burden. It is not the citizen's duty to protect public safety; that is the job of the FDA. The burden is on the FDA, not the Plaintiffs, to demonstrate that Thimerosal is sufficiently nontoxic for use as a preservative, and that the products containing Hg are safe. Not only have the Defendants failed to provide any proof of that fact, but the Plaintiffs would also actually agree that any record upon which the Commissioner should be allowed to rely to prove safety to the standard "sufficiently nontoxic …"should predate the filing of the Citizen Petition by many years. This is evidence that the Commissioner, if the FDA were doing its job, would have had at his disposal from the very first date that Thimerosal was used as a preservative in products. So where is that evidence? It is not in the administrative record filed by the Defendants.

If, however, the Court decides to accept the erroneous arguments of the Defendants about what is and is not a part of the "administrative record", then the Plaintiffs would agree to withdraw the Petition for Stay,[10] and the Plaintiffs would agree that the documents under consideration should be restricted to only what has been filed by the Defendants as an administrative record. The record that the Defendants have filed is totally bereft of any evidence demonstrating that Thimerosal is sufficiently nontoxic as a preservative. There are no clinical or nonclinical studies to rely upon. There are no affidavits from manufacturers detailing any safety testing that was done before a drug containing Thimerosal was submitted to the FDA for approval. There are no studies conducted by the FDA on the "samples" of any of these products provided to the FDA. There is no record of any meeting or deliberative proceeding in which the FDA evaluated the documents the Plaintiffs or others, as petitioners or commenters, submitted to the FDA for consideration. The record, as it has been filed, is instead filled with a disjointed compilation of a few articles demonstrating the toxic nature of Thimerosal and a few recent, flawed epidemiological studies that claim to find no increased rate of autism and other neurodevelopmental disorders due to increased exposures to Thimerosal.[11]

Our children and grandchildren cannot afford any more delays in the admitted goal that we all have of removing Thimerosal from all products. We cannot afford to give the Commissioner another two years of inaction on this important subject. The health of our

---

[10]  Plaintiffs note that the FDA has already unilaterally converted the petitioners' Petition for Stay of Action into a new citizen petition that is not the subject of this lawsuit and, by taking this action, which appears to the Plaintiffs to be yet another abuse of discretion, instead of simply granting or denying the stay requested, the Defendants have finalized the administrative remedies available to the Plaintiffs vis-à-vis the Citizen Petition filed by the petitioners on August 4, 2004 in FDA Public Docket 2004P-0349.

[11]  It cannot be emphasized enough that these recent flawed studies were not available to the FDA when Thimerosal was approved for use, so they could not have possibly been relied upon at that time to prove that Thimerosal is sufficiently nontoxic. Even if they had been available, they are not adequate proof as required by law, and Plaintiffs would welcome a hearing to demonstrate not only that these studies are flawed, but that even the authors of the studies and other prestigious groups, like the NIEHS, recognize that the studies are not useful. Plaintiffs have addressed these studies in prior filings and will not repeat those arguments here.

children, nieces, nephews, cousins, and grandchildren is at stake, and, if the Commissioner cannot demonstrate that Thimerosal is "sufficiently nontoxic" with evidence that was available to him and which is contained in the "administrative record" filed by the Defendants, then we can ignore the ever increasing body of literature that is coming out warning about the dangers of Thimerosal (for instance, the recent article attached at Tab C), and let's move on to an immediate hearing where the Commissioner is required to prove that statutory requirements have been met.

III.     RESPONSE TO STANDARDS OF REVIEW

A.  Motion to Dismiss

With regard to the standards for reviewing the Defendants' Motion to Dismiss, the APA law is that a Petition for Stay is not required to complete exhaustion of administrative remedies. The same applies to a petition for reconsideration.  The question being raised by the Defendants is whether the mere filing of a Petition for Stay destroys the finality of the underlying action. The answer is that it does not[12], but if the Court were to conclude that it does, then Plaintiffs will happily withdraw the Petition for Stay.  As a matter of simple logic, you can't "stay" a decision to do nothing (which is what the Acting Commissioner has done), so our request for a stay has no legal effect, except possibly to update the record.  Plaintiffs are content to rely in this case on the administrative record that has been filed, if that is what is required to expedite these proceedings.

---

[12] 5 USC 704: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."

Furthermore, as previously stated, since the FDA has treated the Petition for Stay as a new Citizen Petition, it cannot be used to destroy the finality of the decision in this case.

The original Citizen Petition sought delicensing of Hg-containing products, including vaccines, because FDA cannot demonstrate that the products containing Hg are safe, as required by statute, and that Hg is a safe preservative, as required by regulation. The petition presented abundant evidence that Hg is a dangerous toxin to the brain and immune system, but it is not petitioners' burden (cf. vitamins and supplements) to demonstrate that FDA-licensed products are safe.

The FDA erred in its response in attempting to shift the burden of proof to petitioners. Moreover, by comparing the supposed benefits of the products to the risks of "side effects" from Hg, the FDA again ignored its statutory obligation. Petitioners are not challenging vaccines per se, just those (and other products) that contain Hg. The FDA has had a plan since prior to 1999 to remove Hg from licensed products, and industry has been on notice since at least 1999 that removal of Hg is FDA policy. There is no showing by either FDA or industry that all the Hg-containing products cannot be produced and marketed without Hg. Thus, the issue is not whether the benefits of Hg-containing products outweigh their risks, but whether the safety of the products would be improved by removing the Hg. In addition to the safety requirement in FDCA, this was also mandated by Congress in VICA. While FDA's claim that it made the "right" decision might be an appropriate subject for a motion for summary judgment, it can never be the basis for a motion to dismiss.

Petitioners asked FDA to stay its decision. Under FDA regulations, a petition for a stay does not constitute a new petition, although FDA attempted to treat it so. Moreover, the administrative record must include all the information submitted in connection with and in

response to the original petition plus the materials filed with the petition for a stay.  Under 704 of

the APA, the FDA decision is final for purposes of judicial review, whether or not any form of

reconsideration has been requested or determined.  While petitioners, perhaps in vain, hope that

FDA will do the right thing and eliminate Hg from licensed and approved products, FDA's claim

that it is still "thinking about it" cannot defeat judicial review of its refusal to act in the first

place.  All of the information submitted with the petition for stay was in the public domain and

readily available to FDA when it initially refused to act.  FDA's crabbed view of the

administrative record cannot stand.  Under the APA, the record for review should include all of

the information "before" the agency in addition to the materials submitted by petitioner,

especially the safety data on Hg from its own files, and the scientific literature generally

available in the public domain.

The decision of the FDA on September 26, 2006 was final -- albeit wrong and

inadequate.  This Complaint is ripe for discovery, hearing and/or dispositioin.

B.  Motion for Preliminary Injunction

In addition to the relief sought in the amended complaint, the Plaintiffs are seeking injunctive

relief with respect to the influenza vaccines that are being administered to pregnant women and

children.  Defendants correctly state the requirements for obtaining such relief:

> To obtain a preliminary injunction, a party must demonstrate that:
> (1)    it has a substantial likelihood of success on the merits;
> (2)    it will suffer irreparable injury in the absence of
>        preliminary relief;
> (3)    other interested parties will not be substantially injured if
>        the requested relief is granted; and
> (4)    granting such relief would serve the public interest.

First of all, the Plaintiffs do have a substantial likelihood of success on the merits.  Not

only is there no proof (as required) that the Thimerosal in influenza vaccines is sufficiently non-

toxic, but there is proof in the record that exposures as low as a few parts per billion are dangerous.  Plaintiffs are prepared to immediately hold a hearing on this first requirement, and Plaintiffs will prevail.

Secondly, our country will suffer irreparable injury without the relief being requested, and all of the Plaintiffs in this action have children and grandchildren, nieces and nephews and other relatives who are in need of Thimerosal-free vaccines.  The Court needs to remember that all children will be injured at some level of exposure to mercury, and as the levels of exposure are reduced, it only reduces the percentage of children that are injured, based on the genetic susceptibilities of the children and their abilities to excrete the mercury.  Plaintiffs have demonstrated that the exposures to Thimerosal from vaccines could reach as high as 60% of what we were administering to children in the 90's (as admitted by the Defendants to be 187.5 micrograms), so the question is not will there be harm, but rather what percentage of our children will be harmed.  This is a national emergency, and injunctive relief is absolutely necessary, since the Defendants are clearly not doing their jobs.  After telling Congress that Thimerosal was removed from all childhood vaccines, they are now responsible for Thimerosal-containing influenza vaccines being injected, not only into children every year, but into pregnant women at the most vulnerable time for the developing fetus.

Thirdly, there has been no demonstration that any other parties will be injured by the injunctive relief being sought.  Certainly, our children will not be injured.  Defendants have provided absolutely no proof that the supplies of Thimerosal-free influenza vaccines are inadequate to provide that alternative to children and pregnant women.  There are no affidavits from any of the manufacturers of influenza vaccines, either those that produce the vaccine with or those that produce the vaccine without, to suggest that anyone will be injured.  The

manufacturers of the Thimerosal-containing influenza vaccines are still free to market this product in other countries (if they can find one willing to accept such vaccines or some place not astute enough to recognize what they are being sold). They can put a warning label on the vaccines, under the relief being requested, and see if any Americans are dumb enough to choose mercury-containing vaccines over mercury-free vaccines. There is no evidence in the record that anyone will be injured by the relief that is being sought.[13] Additionally, the companies have had over eight years of notice of this country's "policy" of eliminating mercury from vaccines, so they have had plenty of time to comply.

Finally, granting the relief requested in the Motion for Preliminary Injunction will serve the public interest. Not only will the relief stop the dangerous practice of injecting pregnant women and children with mercury, but it will also restore public confidence in the safety of our vaccines. It is absolutely imperative that we achieve high percentages of children who are being vaccinated for dangerous childhood diseases, and the best way to achieve these good uptake rates is to convince parents that the vaccine supplies are safe and effective and necessary. Without such public confidence, we run the risk of outbreaks of childhood diseases that once were epidemic and today are largely under control. Until our Public Heath Service can stand up and announce that mercury has been removed from all vaccinations, there will be problems with obtaining the public confidence that is needed for childhood vaccination programs.

Beginning on page 15 of their memorandum, the Defendants argue that Plaintiffs are not likely to succeed on the merits because the FDA appropriately denied the original citizens petition. Here the Defendants seem to argue that the FDA's administrative decision is not only

---

[13] Plaintiffs do not even need to point out that influenza vaccines are not effective, particularly for children. The recommendation is to give infants TWO shots in the first year of life, largely because one shot doesn't come close to producing any meaningful immune response. It is also not necessary to point out that there are better alternatives, such as antivirals for children who are at risk from influenza. It is not necessary to show that this in not a bad year for influenza, and the time to get vaccinations, assuming they were effective (which they are not) has already passed.

final, but it must be accepted, unless Plaintiffs can show that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." In response, the Plaintiffs would argue, "All of the above!"

Under the "law", the administrative discretion limitations affirmed in *Berkovitz* make it clear that the Defendants' actions fall under the "an abuse of discretion" portion of 5 U.S.C. § 706(2)(A). Moreover, because the Defendants are acting in concert with the manufacturers of drugs that contain mercury-based preservatives, who, by knowingly not complying with 21 CFR § 610.15(a), are, among other things, engaged in the distribution of adulterated drugs, Defendants are also making administrative decisions that are "otherwise not in accordance with law" under 5 U.S.C. § 706(2)(A). At the very least, Plaintiffs are entitled to discovery and a hearing on this issue.

Based on the limits of administrative discretion affirmed in *Berkovitz* and the Defendants' statements in the Defendants' denial of the Plaintiffs' Citizen Petition, the Defendants' decisions have clearly exceeded the agency's administrative discretion "authority" with respect to licensing and approving vaccines and other drugs preserved with Thimerosal or other mercury compounds without proof from the manufacturers that the Thimerosal used as a preservative in these vaccines and other drugs is "sufficiently nontoxic" in each formulation as required by 21 § CFR 610.15(a). Since the Defendants have presented no scientific data in this case nor provided published peer-reviewed studies to support most of the Defendants' statements or evaluations of the Plaintiffs' citation-supported assertions, the Plaintiffs see no science to which the Court should defer.

Page: 20

The Defendants have presented no scientific information or citations in support of the majority

of the Defendants' statements.  Moreover, the Defendants' citation of the 2004 IOM committee's reported findings have been found to be unsound because the epidemiological studies on which the 2004 IOM committee relied have been found to be seriously flawed by independent researchers (see plaintiff's citizen petition [Amended Complaint, Exhibit A] pages 35-44, and Amended Complaint, Exhibit E, Supporting Document, pages S-R-31-34) and, in the case of the key published U.S. study by Verstraeten et al. on the Vaccine Safety Datalink database, by the National Institute of Environmental Health Sciences (NIEHS) (Footnote n.  An 18-page report issued by an Expert Panel to the NIEHS that is titled "Thimerosal Exposure in Pediatric Vaccines: Feasibility of Studies Using Vaccine Safety Datalink and dated on "August 24, 2006," which was issued as the Appendix to a 5-page October 2006 NIEHS report, which is simply titled "Thimerosal Exposure in Pediatric Vaccines" [http://www.safeminds.org/pressroom/pres_releases/Thimerosal_Pediatric_Vaccines.pdf]). Moreover, the cited Fombonne, et al study has been shown to be flawed.  (See Am. Compl., Exh. E, App. A.)  Further, the Plaintiffs have shown that study actually supports a conclusion opposite to the one the Defendants have argued, apparently without critically evaluating the Fombonne et al. study's published data.

Thomas Verstraeten, the lead co-author of the only American epidemiological study of an association between vaccines and autism stated in a letter to Pediatrics [2004;113;932]: "The article [reporting the results of the U.S. study] does not state that we found evidence against an association, as a negative study would.  It does state, on the contrary, that additional study is recommended, which is the conclusion to which a neutral study must come. . . . The bottom line is and has always been the same: an association between thimerosal and neurological outcomes could neither be confirmed nor refuted, and therefore, more study is required."

21

In summary, Since the Defendants have presented <u>no</u> scientific data in this case <u>nor</u> provided published peer-reviewed studies to support most of the Defendants' statements or evaluations of the Plaintiffs' citation-supported assertions, the Plaintiffs see <u>no</u> science to which the Court should defer.  The Defendants argue that the Court's review should be limited to the administrative record that has been filed, and Plaintiffs are more than willing to rest on that record as well.  That record is totally bereft of anything that supports the arbitrary and capricious actions of the Acting Commissioner.

The bare assertion that products containing Thimerosal have been found to be safe is not something that this Court should defer to at all.  Page: 22
 Since the Defendants failed to provided supporting citations of data or scientifically sound published peer-reviewed safety (toxicity) studies (not flawed epidemiological studies) or any other safety data (e.g., Material Safety Data Sheets [Am. Compl., Exh. E, App. C]) to support their findings, the Plaintiffs would respectfully request that the Court  dismiss the Defendants' assertions here as unsupported rhetoric.

Page: 22
Since Defendants' assertion that "determining the safety of a product involves weighing the benefits against the risks" is obviously an exercise in the application of administrative discretion, then, as the Plaintiffs have repeatedly asserted in their Citizen Petition and subsequent documents filed with the FDA and/or the Court, under the limits on discretion affirmed in *Berkovitz*, the Defendants can only lawfully exercise this administrative discretion concerning drug safety after the requirements of all applicable policies, laws, and statutes pertaining to safety have been met,  Moreover:

a) as the Plaintiffs have shown, the Defendants' failure to even address the limits to administrative discretion affirmed in *Berkovitz* in the Defendants' response to the Plaintiffs' citizen petition and

b) the Defendants' improperly dismissive treatment of *Berkovitz* in this memorandum clearly supports,

the Defendants have knowingly ignored:

i) the limits on discretion affirmed in *Berkovitz*,

ii) a clear legally binding biological standard and CGMP <u>minimum</u> and law set forth in 21 CFR § 610.15(a), and

iii) the clear statutory CGMP-compliance requirements set forth in 21 U.S.C. § 351(a)(2)(B), and

the Defendants have thereby knowingly colluded with the manufacturers of drug products that are preserved with Thimerosal or other mercury-based compounds to, among other things, knowingly distribute drugs that are adulterated

Page: 23

By the FDA's admission in the Defendants' response to the Plaintiffs' Citizen Petition, the FDA does <u>not </u>really know how many drug products there are on the market today that contain some level of Thimerosal or other mercury compound and, outside of current vaccines (where there are currently about 16 U.S.-licensed Thimerosal-containing products) and serum products (about 4), the FDA can only estimate the number of eye, ear and nasal preparations (as about 45) that contain some level of Thimerosal or other mercury compound – for a total of about 65 products. The Plaintiffs note that about 65 Thimerosal-containing drug products is more than a few.

Page: 24

The Plaintiffs again note that legally the "absence of evidence of harm" does <u>not</u> constitute

proof of safety or proof that a preservative is "sufficiently nontoxic" as required by 21 CFR §

610.15(a) and, in this case, clearly indicates:

    a.  The manufacturers of Thimerosal-preserved vaccines have knowingly failed to conduct the scientifically sound and appropriate toxicity studies required to prove safety to the degree ("sufficiently nontoxic") required by law (21 CFR § 610.15(a)), and

    b.  The Defendants have knowingly cooperated with these manufacturers in the approval and distribution of these adulterated Thimerosal-preserved vaccines, <u>since 1988</u>, when the Supreme Court unanimously upheld limits on administrative discretion in *Berkovitz* that limit administrative discretion to instances where the clear requirements of any policy, law or statute relative to safety have been met or exceeded, <u>if not since 1973</u>, when the drug law was changed to require that a compound used as a preservative must be proven to be "sufficiently non-toxic …" (<u>see</u> 21 CFR 610.15(a)).

Page: 24

Since several recent peer-reviewed publications have established that the influenza

vaccines are <u>not</u> effective in preventing those inoculated from getting influenza or in preventing

the spread of influenza (see Am. Compl., Exh. E, Supporting Document, pages S-R- 4, 14, 16,

20, 26, 37, 39, 74, 80, 88, 91, 93, 94, 116, and 120 as well as supporting references 20, 21, 24,

and 39), the Plaintiffs find, and the Court should find, that these influenza vaccines do <u>not</u>

provide substantial benefit to the public but rather only benefit the makers of influenza vaccines

and the other healthcare establishment segments who profit from the distribution and

administration of influenza vaccine doses to the public.  It is important to understand, however,

that Plaintiffs' main argument is a lack of proven safety.  The lack of effectiveness just goes to

the public interest balance argument for the Motion for Preliminary, and it responds to the

Defendants' misguided notion that we should be using a risk-benefit analysis, instead of making

them do their job and prove safety.

Page: 25

The Defendants' discussions about weighing risks and benefits is a clear admission that the preservative level of Thimerosal in the influenza vaccines does constitute a risk and has <u>not</u> been proven to be "sufficiently nontoxic so that the amount present in the recommended dose of the product will not be toxic to the recipient" as is clearly required by this standard for finished pharmaceuticals (a legally binding biological standard and current good practice [CGMP] <u>minimum</u> under 21 CFR § 211.1) set forth in 21 CFR § 610.15(a).  That this is the case should be obvious to the Court because if the "sufficiently nontoxic …" requirement set forth in 21 CFR § 610.15(a) had been met, there would be <u>no</u> need for the Defendants to use the indirect "the theoretical risk of harm" equivocation that the Defendants have continually used in their responses to both the Plaintiffs and the Court.

Page: 25

Since the influenza vaccines have been clearly proven to be ineffective, the Plaintiffs, and hopefully the Court, properly recognize that, since these vaccines are ineffective, the Defendants' statement, "[i]f FDA now revoked the licenses for all thimerosal-containing vaccines, many people would be in serious danger from the diseases that those vaccines prevent" is <u>not</u> supported by factual reality for the Thimerosal-containing influenza vaccines.

Here, Plaintiffs simply note that, since multiple milliliters of these drug products are administered and the products are preserved with mercury compounds at a mercury level of 25 to 50 ppm, where, based on a 1971 Eli Lilly memo, a 0.5-mL dose of a vaccine containing a 1-ppm level of Thimerosal (0.5-ppm level of mercury) can be toxic (with the recipient receiving a 0.5-microgram dose of mercury), Defendants' statement is misleading because the dose of mercury that an antivenom recipient may receive is anything but small since the treatment dosing ranges from 1 to 10 mL and provides from 25 to up to 500 micrograms of mercury, in some cases.

Based on the Defendants' failure to provide any data that establishes the mercury dose or specific dose [dose per kg of body weight] that the recipients are given is "sufficiently non-toxic," the Plaintiffs must and the Court should reject the Defendants' view because the Defendants have provided <u>no</u> data or study to substantiate the Defendants' unsupported claim that "the mercury exposure from those products is minimal."

One of the issues that received very little attention in the Memorandum from the Defendants is the fact that Thimerosal –free influenza vaccines are available.  On page 19, without providing any supporting evidence, the Defendants state that even where a thimerosal-free formulation of the vaccine exists (as is the case with influenza vaccines), "at this time manufacturers simply cannot produce enough of either formulation for all those who should be immunized."  This statement is false, and Plaintiffs would challenge the Defendants to provide any evidence of this.  In point of fact, the CDC is terribly worried that there will be large stockpiles of influenza vaccines that will not be used this year, so, if anything there is too much vaccine available to meet the demand.

Beginning on page 21 of the Defendants' Memorandum, it is argued that the FDA complied with the FDCA and its regulations when they approved mercury as a preservative.  Their argument is that, since the FDA licensed the products, they must have been demonstrated to be safe.  First of all, they have provided no evidence of what was considered when the products were licensed, but they also misstate the standard for preservatives.

Page: 26

21 CFR § 610.15(a), a biological product standard and, by supplementation, a CGMP <u>minimum</u> for finished pharmaceuticals under 21 CFR § 211.1, which incorporates § 610.15(a) as a CGMP <u>minimum</u> by reference, clearly requires proof of safety to meet the standard that a "preservative

used shall be sufficiently nontoxic so that the amount present in the recommended dose of the product will not be toxic to the recipient" and the defendants' usage of various forms of the "risk of harm" rhetoric clearly admits that the requisite proofs of safety have <u>not</u> been obtained, it is clear that the defendants are attempting to illegally (in violation of law) shift the FDA's and the manufacturers' burden to "prove safety" ("sufficiently nontoxic") from themselves to the plaintiffs and to substitute a lesser, non-complying standards ,"lack of harm" or "no proof unsafe" burden and improperly place that burden on the plaintiffs.

Here again, we are faced with the apparent arrogance of the FDA when they say in effect, "Trust us.  All these mercury-containing products were demonstrated to be safe  prior to our approval.  We don't have to show you what we considered.  We are the experts, and you have to accept our word that we had the required evidence of safety."  Then they go on to say that, without even allowing the Plaintiffs to see what it was that they considered when all these drugs were approved, the burden nevertheless shifts to the Plaintiffs to show that they acted capriciously.  At this point, there is no evidence that the FDA considered any evidence at all, and Plaintiffs should  not be put in the position of having to divine what they might possibly have considered.

If the FDA had done its job, they would be providing the evidence of safety in the administrative record, and they would not be talking about weighing risks and benefits.  They have recognized that there are risks, and that is evidenced by the fact that they have removed Thimerosal from many childhood vaccines.  Now they claim that the issue is not whether mercury is toxic, something everyone recognizes, but whether there is some level below which it won't matter.

Plaintiffs would challenge the FDA to provide any evidence about how much mercury is safe for the developing fetus when pregnant women are vaccinated.   There is no way that the Defendants can provide such proof of safety for any level being injected into a pregnant woman. While the FDA claims that Plaintiffs should rely on their "expertise", it does not take any expertise to recognize that they have acted unreasonably by allowing mercury to be injected into pregnant women and children.   They cannot find a single parent or pregnant woman who, given a choice, would accept such an injection, particularly when a Thimerosal-free vaccine is available.

On page 23, footnote 8, the Defendants state that the Plaintiffs did not raise the claim that the influenza vaccines are ineffective and unnecessary until now, and therefore these claims are beyond the scope of the instant case.  This footnote is almost (but not quite) funny.  It is the Defendants who raised the improper balancing of risks versus benefits as being the standard to be applied, not the Plaintiffs.  Plaintiffs are simply pointing out that, even if the flawed standard put forward by the Defendants were used, the benefits of putting influenza vaccines into pregnant women and children are nil, and certainly do not outweigh any risks at all.  This is particularly so where, as here, a Thimerosal-free alternative is available.

On page 24, it is said that "plaintiffs have failed to support their claim alleging the 'highly dangerous neurotoxic, carcinogenic, and teratogenic effects of Thimerosal.' … Plaintiffs' motion, therefore, lacks support for the extraordinary relief requested."  Plaintiffs would suggest that the Defendants read the administrative record that they have filed.  The Court should accept the evidence based assertions of the Plaintiffs over the non-evidence based assertions of the Defendants.  Plaintiffs challenge the Defendants to provide one credible witness to suggest that Thimerosal is NOT carcinogenic, teratogenic, and neurogenic.

The requested relief in this case is rather routine, not extraordinary. After all, it was the FDA that suggested, over 8 years ago, that we should get mercury out of products, and in 1983, they stated their intent to get mercury out of topicals. The FDA issues black box warnings and recalls all the time. To do what Congress has commanded can hardly be characterized as "extraordinary." Besides, how hard can it be to package vaccines in single doses, so that a preservative is not necessary at all? We already know that influenza vaccine can be manufactured without Thimerosal because it is.

Further, on page 24, the Defendants claim that Plaintiffs have made improper contentions about the requirements of 21 C.F.R § 610.15(a). Since 21 CFR § 610.15(a), a biological product standard and, by supplementation, a CGMP <u>minimum</u> for finished pharmaceuticals under 21 CFR § 211.1, which incorporates § 610.15(a) as a CGMP <u>minimum</u> by reference, clearly requires proof of safety to meet "preservative used shall be sufficiently nontoxic so that the amount present in the recommended dose of the product will not be toxic to the recipient" and the defendants' usage of various forms of the "risk of harm" rhetoric clearly admits that the requisite proofs of safety have <u>not</u> been obtained, it is clear that the defendants are attempting to illegally (in violation of law) shift the FDA's and the manufacturers' burden to "prove safety" ("sufficiently nontoxic") from themselves to the plaintiffs and to substitute lesser, non-complying standards ,"lack of harm" or "no proof unsafe" burden and improperly place that burden on the plaintiffs.

The plaintiffs note that the defendants' language that "all [products] were demonstrated to be safe prior to receiving approval from FDA" is at odds with the defendants' admitted failure to require proof of safety to the degree required by 21 CFR § 610.15(a) as reflected in their continued attempt to substitute lack of proof of harm for the safety studies required to meet the

requisite level of proof of safety set forth in 21 CFR 610.15(a) – safety studies have <u>not</u> been

conducted as the defendants have admitted, in testimony before Congress, and a Congressional

report has reported.  (Amended Complaint, Exh. A, endnote 29: Mercury in Medicine—Taking

Unnecessary Risks published in May 21,2003 <u>Congressional Record</u> (CR), pp E1011 – E1030.

"The FDA never required the pharmaceutical industry to conduct extensive safety studies on

thimerosal or ethylmercury. It appears that our Federal regulatory framework (the FDA and its

predecessor organizations) failed to require manufacturers to prove thimerosal was safe. They

failed to require industry to conduct adequate testing to determine how thimerosal is

metabolized. The FDA failed to require that industry conduct studies to determine the maximum

safe exposure level of thimerosal." [<u>See</u>, May 21, 2003 CR: E1014, bottom col. 2 to top of col.

3.]

      On page 25, Defendants try to minimize their statutory requirements with regard to

approving a preservative like Thimerosal.  The plaintiffs did <u>not</u> assert, as the defendants allege,

that this binding regulation was a "statutory guideline" <u>nor</u> did the plaintiffs state that by, "its

own terms - require certain 'toxicological proofs' or 'studies' to demonstrate sufficient

nontoxicity to all 'intended direct and indirect recipients under the worst-case dosing regimen

with some appropriate safety factor.'"  However, since 21 CFR § 610.15(a) is a legally binding

<u>minimum</u> safety standard, it requires the manufacturers perform the required safety tests to prove

the preservative is "sufficiently nontoxic" and submit those supportive tests to the FDA prior to

approval of a drug product preserved with Thimerosal or other mercury compound.  For, without

this safety data, how can the FDA determine/prove that a preserved drug product meets the

<u>minimum</u> standard established in 21 CFR 610.15(a) and is safe as it agrees should be done prior

to approval?  Obviously, the FDA <u>cannot</u>.  In addition, the regulations in 21 CFR Part 610—

GENERAL BIOLOGICAL PRODUCTS STANDARDS are clearly legally binding standards that the manufacturers of biological drug products are explicitly required to meet. Thus, the plaintiffs must reject the defendants' unsupported position that the regulation set forth at 21 CFR 610.15(a) "merely articulates the general safety standard by which all ingredients, preservatives, diluents, and adjuvants in biological products are scientifically evaluated by FDA." Moreover, the defendants' assertion that the "FDA has found that all vaccines currently being marketed that contain thimerosal as a preservative are safe" here is linguistically at odds with the language the defendants used earlier that stated: "Similarly, FDA may not approve a biologics license application unless and until the product has been proven safe, pure, and potent. 42 U.S.C. § 262(a)(2)(C)." Based on the plaintiffs' reading of 42 U.S.C. § 262(a)(2)(C), which states (with underlining added for emphasis):

> "(C) The <u>Secretary shall approve a biologics license application</u> -
>   (i) <u>on</u> the basis of <u>a demonstration that</u> -
>     (I) the <u>biological product</u> that is the subject of the application <u>is safe</u>, pure, and potent; and
>       (II) the facility in which the biological product is manufactured, processed, packed, or held meets standards designed to assure that the biological product continues to be safe, pure, and potent; and
>     (ii) if the applicant (or other appropriate person) consents to the inspection of the facility that is the subject of the application, in accordance with subsection (c) of this section,"

the plaintiffs agree that the phrase "on the basis of a demonstration that" requires the putative manufacturer to prove the biological drug product is safe. To the extent that proof that the preservative meets the "sufficiently nontoxic" standard set forth in 21 CFR § 610.15(a) is one binding safety requirement to which the drug maker must conform, the manufacturer is explicitly required to prove (demonstrate) a preserved product is "sufficiently nontoxic" and, as far as the plaintiffs can determine, scientifically sound and appropriate toxicity testing is the only way the

manufacturer can provide the requisite proofs.  Thus, absent proof that the preserved product

meets the requirements of § 610.15(a), the defendants <u>cannot</u> legally "find" that the drug product

is safe.  Yet the defendants continue to claim the defendants have the administrative discretion to

ignore this clear binding requirement of the drug law.  Thus, by their own statements, the

defendants have admitted and are admitting that the defendants have abused their discretion and

knowingly approved vaccines preserved with Thimerosal without obtaining the requisite proof of

safety – a clear abuse of discretion, at odds with the law, and, based on 21 CFR 210.1(b),

potentially subjecting the defendants to regulatory action.

Defendants allege that the FDA has complied with the regulations and has not abused its

discretion.  Since, as the defendants know, the drug manufacturers (and <u>not</u> the FDA) are

required to comply with § 610.15(a), the statement that the  "FDA has complied with 21 C.F.R. §

610.15(a)" is a knowingly false statement apparently made in an attempt to cover up the

defendants' knowing and collusive failure to require the vaccine makers to comply with 21

C.F.R. § 610.15(a) and the defendants' violative approval of Thimerosal-preserved vaccines

without demonstrating one of the requisite proofs of safety.

On page 26, the Defendants allege that the FDA has complied with the Public Health

Service Act.


SUMMARY

COUNT I:

Under Count I of the Amended Complaint, Petitioners allege that the Acting

Commissioner of the FDA has not done his job.  He has not produced any evidence that

Thimerosal used as a preservative in any product is sufficiently nontoxic as required by law.

Rather than even try to answer this count, the Defendants have chosen to argue that the record is not complete and the Plaintiffs have not exhausted their administrative remedies.

If the Court chooses to remand this matter to the FDA for a proper response to the Citizen Petitioner that was file two and one half years ago, then Plaintiffs would request that a very short deadline be placed upon the FDA to file a proper response and would request that fees and costs be awarded at this time.

COUNT II:

Under Count II, the Plaintiffs have complained that, if the Court accepts the letter of September 26, 2006 as being a final decision by the Commissioner, then that decision is being challenged, and Plaintiffs are seeking discovery and a hearing on the issues.

ADDITIONAL CLAIM PLED:

Also under Count II is a complaint that cannot be dismissed by the Court, because it does not depend on whether or not administrative remedies have been exhausted. With regard to the claims in the amended complaint that the Defendants have violated their responsibilities under 42 U.S.C. §300aa-27, there is no need to exhaust any administrative remedy, and violations of this section can and should be heard by this Court now.

INJUNCTIVE RELIEF:

Finally, the Plaintiffs have demonstrated that the Motion for a Preliminary Injunction should be expeditiously heard by this Court.

RELIEF SOUGHT:

1.    An Order denying the Defendants' Motion to Dismiss;

2.    A ruling that, since the FDA has treated the Petition for Stay as a "new" Citizen Petition, they cannot use the Petition for Stay as an excuse to say that administrative

action on <u>this</u> Citizen Petition is not final and Plaintiffs have not exhausted their

administrative remedies;

3.      A ruling that this case is ripe for disposition by this Court;

4.      A ruling that this Court has jurisdiction to hear claims under 42 U.S.C. §300aa-27,

and that such claims are properly before the Court in this case.

5.      A ruling that Plaintiffs are entitled to engage in discovery with regard to the issues

raised in this case and setting a discovery schedule.

6.      An Order granting the relief requested in the Plaintiffs' Motion for a Preliminary

Injunction, or an immediate hearing to address the issues raised in the Motion for

Preliminary Injunction; and

7.      For such other relief as to the Court may seem appropriate.


Respectfully submitted,

<u>s/ *Clifford J. Shoemaker*</u>
Clifford J. Shoemaker
Shoemaker & Associates
Counsel for Plaintiffs
9711 Meadowlark Road
Vienna, VA 22182
703-281-6395
Fax 703-281-5807


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was electronically filed this 23rd day of January, 2006.


<u>s/ *Clifford J. Shoemaker*</u>
Clifford J. Shoemaker